## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ERICKA NEWBY, individually and on behalf
of all others similarly situated,

                Plaintiff,

v.

RITA'S FRANCHISE CORPORATION, a
Pennsylvania corporation, and JOHN DOES
1-100,

                Defendants.

Case No.

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

1.      Plaintiff Ericka Newby ("Newby" or "Plaintiff") brings this Class Action Complaint against Defendant Rita's Italian Ice, Inc. ("Rita's") to stop Defendant Rita's Franchise Corporation and John Does 1-100s' ("Defendant") practice of systematically continuing to send text message calls to cellular telephones after consumers have revoked their consent to receive them and to obtain redress for all persons injured by its conduct. Plaintiff Newby for her Class Action Complaint alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

### PARTIES

2.      Plaintiff Newby is a natural person and domiciled in the State of Virginia.

3.      Defendant Rita's, is a corporation incorporated and existing under the laws of the State of Pennsylvania whose headquarters is located at 1210 Northbrook Drive, Trevose, PA 19053. Rita's does business throughout the United States, including in the State of Pennsylvania and this District.

4.      Defendants John Does 1-100 are franchisees or other Rita's-owned or affiliated entities that gave actual or apparent authority for the calls to be made, or ratified the making of the calls and who knowingly received the benefits of the calls at issue in this Complaint. All John Does used the same text messaging platform for their "Cool Alerts" "Favorite Flavors of the Day" text messages and the messages were each sent from the same equipment and number or address (which to consumers uniformly appears as ca@ritasfranchises.com). Such John Does are known only to the Defendant may be identified following reasonable discovery.

**JURISDICTION & VENUE**

5.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA") a federal statute.

6.      The Court has personal jurisdiction over Defendant and venue is proper in this District because Defendant is registered to do business in the State of Pennsylvania, regularly conducts business in the State of Pennsylvania and in this district, its registered agent for service is located in this District, is headquartered in this District, and a substantial part of the events giving rise to the claims asserted here occurred in this District.

**COMMON ALLEGATIONS OF FACT**

A.      **Bulk SMS Marketing**

7.      In recent years, marketers who have felt stymied by federal laws limiting solicitation by telephone, fax machine, and e-mail have increasingly looked to alternative technologies through which to send bulk messages cheaply and to be received by consumers instantly.

8.      Bulk text messaging, or SMS marketing, has emerged as a new and direct method of communicating and soliciting consumer business. The term "Short Message Service" or "SMS" is a messaging system that allows cellular telephone subscribers to use their cellular telephones to send and receive short text messages, usually limited to 160 characters. An SMS message is a text message call directed to a wireless device through the use of the telephone

2

number assigned to the device.

9.     When an SMS message call is successfully made, the recipient's cell phone rings, alerting him or her that a call is being received. As cellular telephones are inherently mobile and are frequently carried on their owner's person, calls to cellular telephones, including SMS messages, may be received by the called party virtually anywhere worldwide and instantaneously.

10.    In addition, some companies such as Defendant's are turning to cheaper methods to text message en masse their consumers by initiating the text messages from emails that are connected with the consumers' phone number and appear as a text message on the consumer's phone. For instance, if someone wanted to send a text message from their email to a consumer's AT&T phone number, they could email the consumer's ten digit phone number 123-456-7890 as 1234567890@mobile.att.net and the consumer would receive that email as a text message. The advantage is that businesses can send bulk messages cheaply to consumers *en masse* to the consumer's cellular phone for instant communication.

**B.     Defendant Systematically Transmits Text Messages to Consumers Who Have Opted Out of Receiving the Text Messages**

11.    Rita's bills itself as the largest Italian Ice concept in the nation, operating in 19 states with over 625 units.

12.    In order to promote its products, Rita's offers "Cool Alerts," which includes its "Favorite Flavors of the Day" program. As part of that program, a consumer enters his first and last name on a Rita's website, (in plaintiff's case http://www.ritasfranchises.com/stores/store.cfm?store=2278&p=menu, specifically the subpage http://www.ritasfranchises.com/stores/store.cfm?store=2278&p=fod ) and indicates whether he wants to receive the alerts by email, text message, or both. In addition, the consumer enters his mobile phone number and selects his mobile provider. On information and belief, Defendant asks for the mobile provider since it will generate the text message by way of sending bulk

emails to the consumers through Defendant's text message platform that will be received by the consumers as a text message.

13.     The particular store is relevant only insofar as Rita's will send messages about flavors particular to that store. That is, on information and belief every Rita's store (or at least a substantial percentage) uses the exact same template website (with identical language and terms) and text messaging platform. Indeed, no matter the Rita's franchise, the consent language and text messages are uniform in their language and content (with the exception that the flavors may differ), are sent from the same electronic system or equipment, and are presented to Rita's customers in the exact same way. All consumers who receive these messages see that they are sent from ca@ritasfranchises.com. On further information and belief, Defendant Rita's Franchise Corporation provides franchisees with access to the text messaging platform and website template, which it knows about and substantially controls and oversees. All Rita's franchisees (or at least an ascertainable group thereof) use, know about, and benefit from the text messages. However, on information and belief, individual franchisees do not have the ability to control the text messaging platform, as that is operated by Defendant Rita's Franchise Corporation or an entity under its operation and control or acting as its agent.

14.     The problem for Rita's customers is that Rita's often refuses to honor opt out requests. That is, notwithstanding language in the text messages themselves that instruct consumers to press "STOP 2 cancel" or "STOP 2 quit," consumers who reply "STOP" as instructed continue to receive text messages even though they have revoked their consent.

15.     The FCC, in a 2015 Press Release, clarified the right of consumers to revoke their consent to receive text messages:

> **"Empowering Consumers to Say 'Stop'** – Consumers have the right to revoke their consent to receive robocalls and robotexts in any reasonable way at any time."[1]

16.     In sending the text messages at issue in this Complaint, Defendant utilized an

---

[1] http://transition.fcc.gov/Daily_Releases/Daily_Business/2015/db0619/DOC-333993A1.pdf

automatic telephone dialing system. Specifically, the hardware and software used by Defendant (or its agent) has the capacity to store, produce, and dial random or sequential numbers, and/or receive and store lists of telephone numbers, and to dial such numbers, *en masse,* in an automated fashion without human intervention. Defendant's automated dialing equipment includes features substantially similar to a predictive dialer, inasmuch as it is capable of making numerous text message calls simultaneously (all without human intervention).

17.     Defendant Rita's and the John Does are and at all times were aware that these above described text messages have been made after the consumers have revoked their prior consent to receive them. Indeed, the Internet contains numerous complaints by consumers. For example:

> •     I signed up for the text messages to alert me when my favorite flavors are in my local store. I've tried several times now to cancel them. They say to reply STOP to cancel. No matter how many times I try they keep texting me. AVOID the text message alert option![2]

> •     How do I unsubscribe from receiving text updates on the flavors available in my area? I get multiple texts everyday and have tried replying "Stop" but it doesn't stop. HELP!!!!! Is there a phone number I can call?[3]

> •     Signed up for the text messages and they won't stop. I have emailed tech support and they don't get back to me. I have talked to the gm of the oceanside store, considering he is the only one that got back to me, but he can't help. I just want the text messages to stop.[4]

C.     **Plaintiff's Experience with Defendants**

18.     In or around September 2014, Plaintiff Newby signed up with Rita's for their Flavor of the Day text message alerts on the Rita's website http://www.ritasfranchises.com/stores/store.cfm?store=2278&p=fod.   As part of that program she provided Defendants her cellular telephone number, her carrier name, and her first and last

---

[2] http://www.badappreviews.com/iosapps/33615/rita-s-ice (last visited July 9, 2015).

[3] https://www.facebook.com/RitasItalianIceCompany/posts/10151500858818375 (last visited July 9, 2015).

[4] https://www.facebook.com/RitasofVistaMelrose (last visited July 9, 2015).

name.

19.    In or around October 2014, Plaintiff no longer wanted to receive the text message alerts and replied STOP as instructed in the text message.

20.    However, Defendant Rita continued to send Plaintiff text message alerts.  Plaintiff continued to reply STOP as indicated but Defendants continued to send her text messages.



Figure 1: Sample of one of many text messages that Plaintiff replied stop to.

21.    On November 18, 2014 Plaintiff Newby emailed ca@ritasfranchises.com, the email address that had sent her and every other class member the text messages, and asked Defendant to stop sending her text messages.

22.    After Plaintiff continued to receive text messages from Defendant despite her text message opt out requests and now her email opt out, she sent Defendant another email on November 23, 2014 stating: *"I have emailed you before regarding this issue.  I received numerous Text messages from you. I reply stop to every single one yet receive the text messages every day.  This is been going on for weeks.  Enough is enough. Stop texting my phone ASAP. Remove my number ASAP."*

23.    Plaintiff continued to receive text messages from Rita's and has replied to almost every text message for Rita's to stop.

24.    On information and belief, Plaintiff has received dozens of commercial text messages from Rita's after revoking her initial consent.

25.     By making unauthorized text message calls as alleged herein, Defendant has caused consumers actual harm. In the present case, a consumer could be subjected to many unsolicited text messages since Defendant systematically fails to properly process consumers' opt out requests.

26.     In order to redress these injuries, Plaintiff, on behalf of himself and a class of similarly situated individuals, bring suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("47 U.S.C. § 227"), which prohibits unsolicited voice and text calls to cell phones.

27.     On behalf of the Class, Plaintiff seeks an injunction requiring Defendant to cease all wireless spam activities and an award of statutory damages to the class members, together with costs and reasonable attorneys' fees.

## CLASS ACTION ALLEGATIONS

28.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of herself and a Class defined as follows:

> All persons in the United States who (1) received a text message
> from Defendant Rita's (2) on his or her cellular telephone (3) from
> the last four years through present (4) after they had replied STOP
> to any of Defendants' text messages.

The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released. Plaintiff anticipates the need to amend the class definition following appropriate discovery.

29.    Membership in the class is completely objective and can be readily ascertained through Rita's records, included data stored within and/or related to its messaging equipment and data stored on Rita's servers related to its websites. Class member phone records could also be used secondarily to verify class membership.

30.    On information and belief, there are hundreds, if not thousands, of members of the Class such that joinder of all members is impracticable.

31.    There are several questions of law and fact common to the claims of Plaintiff and the other members of the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class members that may be answered in a single stroke include but are not limited to the following:

(a)    whether Defendant's conduct constitutes a violation of the TCPA;

(b)    whether Rita's continued to send text messages to cell phones after the primary users of those phones responded for the messages to "STOP";

(c)    whether Rita's failed to provide a cost-free means of opting-out;

(d)    whether Defendant utilized an automatic telephone dialing system to send text messages to members of the Class;

(e)    whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct;

(f)    whether Plaintiff and the class revoked their consent by replying STOP to Defendant's text messages;

32.    The factual and legal bases of Defendant's liability to Plaintiff and to the other members of the Class are the same, resulting in injury to the Plaintiff and to all of the other members of the Class, including the annoyance and aggravation associated with such messages as well as the loss of data and temporary inability to enjoy and use their cellphones, as a result of the transmission of the wireless spam alleged herein. Rita's and John Does' text messages additionally interfered with the class members' cell phone data and, given Rita's faulty opt out mechanism, also caused a reduction in available data on any data plan. Plaintiff and the other

members of the Class have all suffered substantially similar harm and damages as a result of Defendant's unlawful and wrongful conduct of transmitting wireless spam. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendant's wrongful conduct. Plaintiff, like other members of the Class, received unsolicited spam text message calls from Defendant. Plaintiff is advancing the same claims and legal theory on behalf of himself and all absent members of the Class.

33.     Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class. Plaintiff's claims are made in a representative capacity on behalf of the other members of the Class. Plaintiff has no interest antagonistic to the interests of the other members of the proposed Class and is subject to no unique defenses. Plaintiff received the text messages after replying "STOP." Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff nor his counsel has any interest adverse to those of the other members of the Class.

34.     The suit may be maintained as a class action under Federal Rule of Civil Procedure 23(b)(2) because Defendant has acted, and/or has refused to act, on grounds generally applicable to the Class, thereby making appropriate final injunctive relief. Specifically, injunctive relief is necessary and appropriate to require Defendant to discontinue sending unsolicited and unauthorized spam text messages to consumers that have expressly responded STOP. Likewise, Defendant has acted and fails to act on grounds generally applicable to the Plaintiff and the other members of the Class in transmitting the wireless spam at issue, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class.

35.     In addition, this suit may be maintained as a class action under Federal Rule of Civil Procedure 23(b)(3) because a class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Absent a class action, most members of the

Class would find the cost of litigating their claims to be prohibitive, and will have no effective remedy. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication. The claims asserted herein are applicable to all customers throughout the United States who received an unsolicited spam text message from Defendant. The injury suffered by each individual class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for members of the Class individually to redress effectively the wrongs done to them. Even if the members of the Class could afford such litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

36.     Adequate notice can be given to the members of the Class directly using information maintained in Defendant's records or through notice by publication.

### FIRST CAUSE OF ACTION
### Telephone Consumer Protection Act
### (Violation of 47 U.S.C. § 227)

37.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

38.     Defendant and/or its agent transmitted unsolicited text message calls to cellular telephone numbers belonging to Plaintiff and the other members of the Class using equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, *en masse*, without human intervention. The telephone dialing

equipment utilized by Defendant and/or its agent, which is substantially similar to a predictive dialer, dialed numbers from a list, or dialed numbers form a database of telephone numbers, in an automatic and systematic manner.

39.     These text calls were made *en masse* and without the consent of the Plaintiff and the other members of the Class to receive such wireless spam. Indeed, consent had been revoked by everyone since they each had responded "STOP."

40.     The text messages to Plaintiff and the class were made after any consent had been expressly revoked by responding "STOP." This alone violates the TCPA.

41.     Additionally, Defendants' supposed opt out mechanism isn't cost free. Among other things, it requires the transmission of data from the user's cell phone that results in a reduction of the user's allowable data. It also doesn't work and requires the user to spend time and energy tracking down someone at Rita's in attempts to get the messages to actually stop.

42.     Based on such conduct, Defendants (Rita's Franchise Corporation and its franchisees) have violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of conduct, Plaintiff and the other members of the Class are each entitled to, under section 227(b)(3)(B), a minimum of $500.00 in damages for each violation of such act.

43.     In the event that the Court determines that Defendant's conduct was willful and knowing, it may, under section 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Class.

44.     Additionally, because the messages steadily continue despite multiple requests that they STOP, the violations are capable of repetition, even if Rita's were to temporarily place them on hold.

**WHEREFORE**, Plaintiff Ericka Newby, on behalf of himself and the class, prays for the following relief:

1.     An order certifying this case as a class action on behalf of the Class as defined above; appointing Plaintiff Newby as the representative of the Class and appointing his attorneys' as Class Counsel;

2.    An award of actual and statutory damages under the TCPA, to be trebled in the event the Court finds that Rita's and/or John Does have acted knowingly;

3.    An injunction requiring Defendant to cease all wireless spam activities, and otherwise protecting the interests of the Class;

4.    An award of reasonable attorneys' fees and costs; and

5.    Such further and other relief the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Dated: July 13, 2015                    ERICKA NEWBY, individually, and on behalf of
                                        all others similarly situated,


                                        By: *Barry L. Cohen /RLO*

                                        Barry L. Cohen, Esquire
                                        bcohen@rccblaw.com
                                        Sean S. Litz, Esquire
                                        slitz@rccblaw.com
                                        101 W. Elm Street, Ste. 220
                                        Conshohocken, PA 19428
                                        Telephone: 484-362-2628
                                        Facsimile: 484-362-2630

                                        Steven L. Woodrow
                                        (swoodrow@woodrowpeluso.com)*
                                        Patrick H. Peluso
                                        (ppeluso@woodrowpeluso.com)*
                                        Woodrow & Peluso, LLC
                                        3900 East Mexico Ave., Suite 300
                                        Denver, Colorado 80210
                                        Telephone: (720) 213-0675
                                        Facsimile: (303) 927-0809

                                        *Counsel for Plaintiff and the Putative Class*

                                        **pro hac vice* admission to be filed